IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRIBALCO, LLC,
        Plaintiff,          *
                                   *
    v.                            *         Civil No. JFM-11-935
                                   *
HUE TECHNOLOGY, INC.,          *
        Defendant.          *
                                   *
                                   *
                               ******

MEMORANDUM

On April 11, 2011, Plaintiff Tribalco, LLC ("Tribalco") filed a Complaint against Defendant Hue Technology, Inc. ("Hue"), alleging breach of contract (Counts I-III), breach of the covenant of good faith and fair dealing (Count IV), conversion (Count V), tortious interference with contract (Count VI), and tortious interference with advantageous business relations (Count VII). Tribalco seeks damages, together with interest, costs, and attorneys' fees. Now pending before this Court is Hue's Motion to Dismiss Counts III, IV, V, VI, and VII, as well as the attorneys' fees demands in all Counts that remain. The issues raised by the motion have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Hue's motion is granted as to Counts V, VI, VII, and attorneys' fees; and denied as to Counts III and IV.

**I.    Background**

The facts, presented in the light most favorable to Tribalco, are as follows. In December 2009, the United States Army awarded Tribalco, a telecommunications company, a contract to provide telecommunications services in Afghanistan and other locations in Southwest Asia (the "Prime Contract"). (Compl. ¶ 8.) Tribalco received a Delivery Order from the Army on

1

September 1, 2010 for the installation of an "Area Distribution Node" ("ADN"), as well as the underground installation of conduit infrastructure ("Outside Plant" or "OSP") at the Army's air field in Kandahar, Afghanistan. (*Id.* ¶ 9.)

On August 17, 2010, Tribalco awarded a subcontract to Hue (the "Subcontract"), pursuant to which Hue agreed to furnish products and services in accordance with the individual task orders issued to it by Tribalco. (*See id.*, Ex. A at arts. V & VI.) The Subcontract provides that Tribalco may terminate performance under the Subcontract if Hue defaults. (*See id.*, Ex. A at art. XXV.) "Default" is defined to include "failure to make progress in the work so as to endanger performance." (*Id.*, Ex. A at art. XXV.) The Subcontract includes an indemnification provision, by which Hue agrees to indemnify Tribalco for any penalty, liability, damage, or forfeiture that Tribalco incurs, through no fault or negligence on the part of Tribalco, in connection with the Prime Contract if such penalty, liability, damage, or forfeiture arises from Hue's breach of the Subcontract. (*Id.*, Ex. A at art. XXVII.)

On September 20, 2010, Tribalco issued Hue a task order, subject to the terms of the Subcontract, for work to be performed in connection with the Delivery Order that Tribalco received from the Army on September 1, 2010 (the "Task Order"). (*Id.* ¶ 15.) Through acceptance of the Task Order, Hue agreed to provide labor and materials for the OSP installation and the ADN installation. (*Id.* ¶ 16.) The Task Order provided that Hue would begin the OSP and ADN projects on September 20, 2010, and complete them by January 31, 2011. (*Id.* ¶ 19.) The total amount that Hue was to be paid under the Task Order was $3,299,531.28. (*Id.* ¶ 20 & Ex. B.) The billing schedule attached to the Task Order is conditioned upon Hue meeting 14 project Milestones. (*Id.* ¶ 20.) On September 15, 2010, Hue submitted two invoices to Tribalco for the total amount of $750,458 for the purchase and shipping of project materials. (*See id.* ¶ 21

& Ex. C.) These invoices corresponded to Milestones 1 and 1.1 of the billing schedule attached to the Task Order. (*Id.* ¶ 21.) Tribalco issued payment to Hue for that amount. (*Id.* ¶ 23.)

Though the OSP and ADN projects were originally scheduled for completion by January 31, 2011, as of February 21, 2011, very little of the OSP installation had been completed. (*Id.* ¶ 26.) As a result, Tribalco sent an e-mail to Hue on February 21, 2011 addressing Hue's unsatisfactory performance and requesting a plan of correction. (*Id.* ¶ 27.) Specifically, Tribalco requested a project schedule for the OSP installation, daily updates, a complete inventory of materials that Hue had delivered, a list of materials yet to be delivered, and a procurement and shipping plan for the ADN material. (*Id.*) Hue provided only some of the items requested. (*Id.*)

By March 16, 2011, Hue had completed no more than 30% of the OSP project and had purchased and delivered only a fraction of the materials required to complete the OSP project. (*Id.* ¶¶ 29-30.) Tribalco notified Hue by letter dated March 18, 2011 that Hue was in default of its obligations under the Task Order and, because it was impossible for Hue to cure its default by completing its work within a timeframe that would enable Tribalco to comply with its Prime Contract with the Army, Tribalco terminated the Task Order and Subcontract for cause. (*Id.* ¶ 32.) Tribalco ordered Hue to return all of the materials Hue had purchased on behalf of Tribalco for the OSP and ADN projects (the "Materials"). (*Id.* ¶ 33.)

Tribalco filed a Complaint against Hue on April 11, 2011 alleging breach of contract in connection with the OSP project (Count I), breach of contract in connection with the Tribalco materials (Count II), breach of contract regarding the indemnification provision (Count III), breach of the covenant of good faith and fair dealing (Count IV), conversion (Count V), tortious interference with contract (Count VI), and tortious interference with advantageous business

relations (Count VII). (ECF No. 1.) On June 10, 2011, Hue filed the Motion to Dismiss now before this Court.

## II. Standard of Review

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Discussion

Hue moves this Court to dismiss Counts III, IV, V, VI, and VII of Tribalco's Complaint, as well as the attorneys' fees demands of Counts I and II, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Hue argues that all of these counts fail because the factual allegations set forth in Tribalco's Complaint are legally insufficient to

support the causes of action. (Mot. to Dismiss 2.) In addition, Hue contends that Tribalco's tort claims are barred by the economic loss doctrine. (*Id.*) Hue's arguments are discussed below.

### A. Breach of Contractual Indemnification Provision (Count III)

In Count III of the Complaint, Tribalco alleges that Hue has breached its contract by refusing to indemnify Tribalco. (Compl. ¶ 58.) Tribalco claims that "Hue promised to indemnify Tribalco if Tribalco incurs any penalty or damages in connection with the Prime Contract as a result of or due to Hue's failure to comply with the Subcontract or Task Order," (*id.* ¶ 55) and "Hue failed to comply with the Subcontract and Task Order by, among other things, failing to make satisfactory progress on the OSP Project, failing to timely complete the OSP Project, and refusing to return or replace the Tribalco Materials" (*id.* ¶ 56). As a result, Tribalco claims that it has and will continue to "incur penalties and damages in connection with the Prime Contract," and accordingly, "Tribalco is entitled to indemnification from Hue for the penalties and damages incurred by Tribalco." (*Id.* ¶ 57.) Hue contends that Tribalco's indemnity claim fails because: "(1) first-party damages do not fall within "indemnity" provisions; and (2) Tribalco has failed to allege any facts showing it has actually paid a damage, penalty, or liability under the Prime Contract as a result of the purported breach." (Mot. to Dismiss 5.)

Contrary to Hue's assertion that "first party damages do not fall within indemnity provisions" (*id.*), the Maryland Court of Appeals has recently stated that "[t]he scope of indemnification is a matter of contract interpretation . . . . '[W]hether the contract covers only fee costs incurred in third party litigation or also covers fee costs incurred in litigation between the parties themselves is of course a question to be answered by interpretation of the contract.'" *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.*, 952 A.2d 275, 284 (Md. 2008) (citing Dan B. Dobbs, Law of Remedies § 3:10(3) n.5 (2d ed. 1993)). Under Maryland law, an express indemnity agreement "must be construed in accordance with the traditional rules of contract

5

interpretation." *Thomas v. Capital Med. Mgmt. Assocs., LLC*, 985 A.2d 51, 68 (Md. Ct. Spec. App. 2009) (quotation omitted).

Courts determine the meaning of contract language by "adhering to the principle of the objective interpretation of contracts." *Ace Am. Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 794 (D. Md. 2008) (citing *ABC Imaging of Wash., Inc. v. The Travelers Indem. Co. of Am.*, 820 A.2d 628, 632 (Md. Ct. Spec. App. 2003)). "Simply put, a court is to determine from the language of the agreement, what a reasonable person in the position of the parties would have understood the contract to mean at the time the contract was entered into . . . ." *Mathis v. Hargrove*, 888 A.2d 377, 396 (Md. Ct. Spec. App. 2005) (citation omitted).

The Subcontract contains the following indemnity provision:

> If [Tribalco] is required to pay any penalty, or incur any liability, damage, or forfeiture, in connection with the Prime Contract as a result of or due to the Subcontractor's failure to comply with any of the provisions of the Prime Contract as incorporated herein, and such failure is not due to any fault or negligence of the Contractor, the Subcontractor agrees to and will hold harmless and indemnify the Contractor against such penalty, liability, damages or forfeiture.

(Compl., Ex. A at art. XXVII.) Read properly, this provision is triggered if two conditions are met: (1) the Subcontractor, Hue, fails to comply with any of the provisions of the Prime Contract, through no fault or negligence of the Contractor, Tribalco; and (2) Tribalco is required to pay a penalty, or incur a liability, damage, or forfeiture, in connection with the Prime Contract as a result. If both those conditions are met, Hue agrees to indemnify Tribalco against such penalty, liability, damages, or forfeiture.

Hue argues that Tribalco's "own first-party losses do not fall within the indemnity provisions of the Subcontract" (Mot. to Dismiss 7) as the indemnification provision is "limited to amounts or liabilities paid out in connection with the Prime Contract, <u>not</u> the Subcontract"

6

(Reply 3). Tribalco alleges, however, that it incurred damages in connection with the Prime Contract because Hue prevented it from fulfilling its obligations to the Army under the Prime Contract in a timely and cost-efficient manner, and that Tribalco had to spend more money on a replacement contractor and replacement materials in order to comply with its duties under the Prime Contract. (*See* Compl. ¶¶ 37-42.) Accordingly, Tribalco claims that it has alleged damages "in connection with the Prime Contract" as a result of Hue's alleged breach. (Opp'n 8.)

Certainly, Tribalco's own costs and expenses arising from Hue's alleged breach of the Subcontract are not covered by the indemnification provision. The question, however, is whether any of those costs and expenses was incurred "in connection with the Prime Contract." At this stage in the litigation, I find that Tribalco has adequately alleged that they were.

Even if the indemnification provision covers some first-party losses, Hue contends "[t]here is not a single factual allegation in the Complaint to explain how much, for what, or to whom Tribalco has incurred any 'damage, laibiltiy [sic] or penalty' that is sufficient to state a claim under the indemnification provision." (Mot. to Dismiss 6.) Hue's contention is belied by the plain language of the Complaint. (Opp'n 6-7.) Tribalco alleges in the Complaint that it "has already spent $48,340.50 (including shipping) to purchase replacement conduit and $18,150.00 (including shipping) for replacement manhole lock-down lids." (Compl. ¶ 38.) Tribalco further alleges that it "has been forced to locate and retain a replacement subcontractor at substantial cost to Tribalco." (*Id.* ¶ 39.) Again, Tribalco claims that these costs were incurred "in connection with the Prime Contract" because "Tribalco was forced to accommodate the Army by spending more money on a replacement contractor and ordering replacement materials." (Opp'n 8.) Certainly, Hue can renew its arguments regarding the extent to which Tribalco's damages were incurred in connection with the Prime Contract at the summary judgment stage once discovery is

7

conducted regarding. At this point, however, I conclude that Tribalco has set forth sufficient facts regarding damages in connection with the Prime Contract to state a claim for breach of the Subcontract's indemnification provision.

**B. Breach of the Covenant of Good Faith and Fair Dealing (Count IV)**

Tribalco alleges in Count IV of the Complaint that Hue's conduct "constitutes one or more breaches of the covenant of good faith and fair dealing." (Compl. ¶ 62.) Hue moves this Court to dismiss this claim because "[t]he Complaint fails to allege any affirmative act by Hue Technology in furtherance of an exercise of discretion under the Subcontract capable of supporting the legal conclusions set forth in Count IV." (Mot. to Dismiss 8-9.) Again, Hue misinterprets Maryland law by arguing that "the duty arises only where a party affirmatively exercises some form of discretion accorded to it by the terms of the contract." (*Id.* at 8.)

While the covenant of good faith and fair dealing applies to situations in which a party affirmatively exercises the discretion accorded to it under the contract, Maryland law recognizes an implied duty of good faith and fair dealing in all contracts. *Blondell v. Littlepage*, 991 A.2d 80, 90 (Md. 2010). However, "the covenant of good faith and fair dealing 'does not obligate a party to take affirmative actions that the party is clearly not required to take under the contract.' Rather, the duty 'simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract.'" *Eastern Shore Markets, Inc. v. J.D. Associates, Ltd.*, 213 F.3d 175, 182-83 (4th Cir. 2000) (citing *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992)). In short, "under the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *Id.* at 184 (citations omitted).

Tribalco alleges in the Complaint that Hue failed to purchase project materials, return the project materials it did purchase, or make satisfactory progress on the OSP Project. (Compl. ¶¶ 24, 26, 29-30, 35.) Accepting these allegations as true and "constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff," *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997), Tribalco's right to receive the fruits of the contract between Hue and Tribalco was frustrated. Accordingly, I find that the Complaint adequately states a claim for breach of the covenant of good faith and fair dealing and I deny Hue's Motion to Dismiss as to Count IV.

### C. Conversion (Count V)

Tribalco alleges that "Hue has unlawfully exercised dominion and control over the Tribalco Materials in defiance and denial of Tribalco's rights." (Compl. ¶ 65.) Hue asserts that Tribalco's conversion claim must be dismissed because the Complaint "does not contain any factual allegations establishing that Tribalco had a right to possession of the materials purchased by Hue Technology for the Project nor does it show that Hue Technology has permanently deprived Tribalco of any rights it may have." (Mot. to Dismiss 10.)

Conversion is an intentional tort, consisting of two elements: (1) a physical act, and (2) intent to exert control over the property. *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835-36 (Md. 2004). The physical act element "can be summarized as any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Id.* at 835 (internal quotation and citation omitted). The intent element requires a defendant to have "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* at 836 (citing *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208 (1985)). Maryland law does not require an allegation of "permanent"

9

deprivation, as Hue argues in its Motion to Dismiss. Rather, the "act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Id.* at 835.

Hue claims that Tribalco has not adequately alleged that it had a right to possess the materials purchased by Hue Technology. (Mot. to Dismiss 10.) Yet, in its Complaint, Tribalco claims that "[b]y accepting the Task Order, Hue agreed to provide labor and materials for the [OSP] installation and the installation of the [ADN] on the Kandahar Air Field." (Compl. ¶ 16.) Tribalco further alleges that "[o]n September 15, 2010, Hue issued two invoices to Tribalco for the purchase and shipping of project materials. The first invoice, which corresponds to Milestone 1 on the exhibit to the Task Order, is in the amount of $481,062.82. The second invoice, which corresponds to Milestone 1.1, is in the amount of $269,395.18." (*Id.* ¶ 21.) Tribalco attaches the invoices to the Complaint as Exhibit C. The invoices clearly state the Task Order Milestones to which the charges correspond, and include the description, "Project Payment: Materials and Shipping – 25% Upfront." (*Id.*, Ex. C.) Tribalco alleges that it "issued payment to Hue in the total amount of $750,458.00 in connection with the invoices. Using the funds provided by Tribalco, Hue purchased the Tribalco Materials on Tribalco's behalf for the OSP and ADN Projects." (*Id.* ¶ 23.) Tribalco further states that upon terminating the Subcontract for cause, Tribalco ordered Hue to return the materials Hue had purchased on behalf of Tribalco and Hue has refused to return them. (*Id.* ¶¶ 33, 35.) Consequently, I find that Tribalco has sufficiently alleged that it had a right to possession of the materials purchased by Hue for the Projects.[1]

---

[1] Additionally, Hue asserts that under Article VIII(A)(1) and (B)(1) of the Subcontract, the materials become the property of the Government upon payment, not the property of Tribalco. (Mot. to Dismiss 10.) Yet the Subcontract language that Hue cites makes clear that the Government only accepts the complete telecommunications project provided by Tribalco and therefore, individual project materials do not become the property of the Government until the

Finally, Hue argues that the allegation of conversion does not amount to an independent tort, but arises out of and relates solely to the parties' duties under the Subcontract. (Mot. to Dismiss 12; Reply 7.) Under Maryland law, to sustain a tort action, a plaintiff must alleged "a duty or obligation imposed by law independent of that arising out of the contract itself." *Pease v. Wachovia SBA Lending, Inc.*, 6 A.3d 867, 889 (Md. 2010). Indeed, there is no basis for Tribalco's claim of conversion outside the Subcontract, as evinced by Tribalco's reliance on the Task Order, its Milestones, and the invoices in asserting its conversion claim. Hue's retention of the materials that Hue purchased on behalf of Tribalco is therefore a breach of contract, and Tribalco cannot reallege it in tort to obtain additional damages. Accordingly, I grant Hue's Motion to Dismiss as to Count V.

### D. Tortious Interference with Contract and Advantageous Business Relations (Counts VI & VII)

Tribalco alleges that Hue has intentionally interfered with the Prime Contract and with Tribalco's existing and prospective business relationship with the Army and teaming partners by substantially impairing Tribalco's ability to perform under the Prime Contract and by disparaging Tribalco to the Army and to Tribalco's teaming partners. (*Id.* ¶¶ 71, 76.)

---

Government accepts the completed project. (*See* Compl., Ex. A at 7 ["Payment of invoices will be made based upon the acceptance by the Government of the entire task or the tangible product deliverable(s) invoiced."].) Tribalco has thus set forth facts alleging that it, not the Government, had a right to possession of the materials purchased by Hue for the OSP and ADN projects at the time of the alleged breach.

Hue then argues in a footnote that the Subcontract is ambiguous as there is an "internal inconsistency between Articles VIII and XII regarding who obtains title to supplies upon acceptance." (Mot. to Dismiss 10 n.1.) I read Article VIII to state that title to materials will pass to Tribalco until completion of the project and acceptance by the Government, at which time title passes to the Government, and therefore, I find no inconsistency between Article VIII and Article XII, which states that title to materials passes to Tribalco. If there were inconsistency between the Articles, however, interpretation of the Subcontract would present a factual question not properly decided on a motion to dismiss. *See Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972) ("The construction of a contract is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim.").

*1. Breach of Duty Independent of any Contractual Duty*

As an initial matter, Hue argues that Tribalco's tortious interference claims fail as a matter of law because they arise from Hue's alleged failure to complete its work under the Subcontract, not from any duty that springs independently from the common law. (Mot. to Dismiss 11.) Tribalco insists, however, that Hue violated duties "that are separate and distinct from Hue's contractual obligations . . . ." (Opp'n 14.)

Again, in Maryland, to sustain a tort action, a plaintiff must alleged "a duty or obligation imposed by law independent of that arising out of the contract itself." *Pease v. Wachovia SBA Lending, Inc.*, 6 A.3d 867, 889 (Md. 2010). Tribalco claims that Hue had an obligation, independent of the Subcontract, to not interfere with the Prime Contract or with Tribalco's existing and prospective advantageous business relationships with the Army and Tribalco's teaming partners by impairing Tribalco's ability to perform under the Prime Contract, or by disparaging Tribalco to the Army and Tribalco's teaming partners. (Opp'n 14; *see* Compl. ¶¶ 71, 76.) Indeed, Maryland case law makes clear that third persons "are under a duty not to interfere with the performance of the contract by the parties to it without lawful justification." *Lake Shore Investors v. Rite Aid Corp.*, 461 A.2d 725, 731 (Md. Ct. Spec. App. 1983). Additionally, other courts have found that, independent of a contractual relationship, there exists a duty in tort to not intentionally cause damage to a party's existing or prospective business relationships. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1255 (D.C. Cir. 2005); *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003).

However, Tribalco alleges in its Complaint that "Hue's failure to perform in a timely or satisfactory manner; conversion of the Tribalco Materials; failure to order critical project materials . . . has unnecessarily jeopardized Tribalco's ability to complete the Delivery

Order . . . ." (Compl. ¶ 43.) Therefore, Tribalco's allegations that Hue intentionally interfered with the Prime Contract by impairing Tribalco's ability to perform under the Prime Contract arise solely from the breach of the Subcontract, not from the independent duty not to interfere with the performance of a contract between other parties. Accordingly Tribalco's allegations regarding Hue's failures to perform sound in contract, not tort, and Tribalco cannot recast them as tortious interference to obtain further damages. Tribalco's allegations regarding Hue's disparagement of Tribalco to the Army and Tribalco's teaming partners, however, implicates a duty independent of the Subcontract and will be considered in the context of the claims stated in both Counts VI and VII.

*2. Disparagement as Tortious Interference with Contract*

Count VI contains an allegation of tortious interference. In Maryland, the elements for tortious interference with contract are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003) (citation omitted). In addition, "to establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference." *Medical Mutual v. Evander*, 660 A.2d 433, 439 (Md. 1995).

By alleging that "Hue disparaged Tribalco to representatives of the United States Army, Tribalco's customer, and to other teaming partners with whom Tribalco has a working relationship" (Compl. ¶ 34), Tribalco simply has not adequately pleaded the facts necessary to state a claim for tortious interference with the Prime Contract under Maryland law. There is no

13

allegation of any loss or damage that resulted from the alleged disparagement, no "destruction of the business relationship which was the target of the interference." Accordingly, I grant Hue's Motion to Dismiss as to Count VI of the Complaint.[2]

*3. Disparagement as Tortious Interference with Advantageous Business Relations*

In Count VII, Tribalco alleges that Hue tortiously interfered with Tribalco's existing and prospective advantageous business relationship with the United States Army and teaming partners by making disparaging comments about Tribalco to them. (Compl. ¶ 76.) Under Maryland law, the tort of intentional interference with business relations has four elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in [its] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Carter v. Aramark Sports & Entm't Servs.*, 835 A.2d 262, 279-80 (Md. Ct. Spec. App. 2003). By alleging simply that Hue disparaged Tribalco to representatives of the Army and other teaming partners (Compl. ¶¶ 34, 76), Tribalco has failed to allege any facts tending to show "actual damage and loss resulting." I therefore grant Hue's Motion to Dismiss as to Count VII of the Complaint.

**E. Attorney's Fees**

In its Complaint, Tribalco seeks attorneys' fees from Hue Technology. Hue moves this Court to dismiss the demand for attorneys' fees in Counts I and II of the Complaint, as well as in any Counts that survive Hue's Motion to Dismiss. Tribalco contends that it is entitled to

---

[2] In addition, Tribalco argues that it has sufficiently alleged a tort as contemplated by the Restatement (Second) of Torts § 766A, which provides that a defendant tortiously interferes with contract "by preventing [the plaintiff] from performing the contract or causing his performance to be more expensive or burdensome." This argument is unavailing. Tribalco's allegations of disparagement fail to claim that Tribalco was prevented from performing the Prime Contract or that Tribalco's performance was more expensive or burdensome as a result of the disparagement.

14

attorneys' fees because the Subcontract requires Hue to indemnify Tribalco for any "penalty" that Tribalco is required to pay and for any "liability damages, or forfeiture" that Tribalco incurs in connection with the Prime Contract as a result of Hue's breach and these terms "plainly encompass attorneys' fees that Tribalco may incur defending itself against any claim by the Army in connection with the Prime Contract resulting from Hue's conduct." (Opp'n 20.)

Maryland "generally adhere[s] to the "American rule," in which each party is responsible for its own legal fees, regardless of who wins in the litigation. Fee shifting, an exception to the American rule, whereby a court orders payment of the prevailing party's attorneys' fees by the losing side, may be accomplished by an express agreement or by statute." *Henriquez v. Henriquez*, 992 A.2d 446, 450-51 (2010) (internal citations omitted). No such express agreement or statute exists in the case sub judice. Where an indemnity provision fails to expressly cover attorneys' fees, courts will not imply the recovery of such fees accrued in an action against the indemnitor. *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.*, 952 A.2d 275, 289 (Md. 2008). Because the indemnification provisions speaks to penalties, forfeitures, damages, and liabilities, but not attorneys' fees, I find no basis for Tribalco to recover attorneys' fees incurred in establishing its rights under the indemnification provision of the Subcontract. As a result, Tribalco's demands for attorneys' fees in all Counts that survive Hue's Motion to Dismiss are dismissed.

A separate order is being entered herewith.

| | |
|---|---|
| August 26, 2011 | /s/ |
| Date | J. Frederick Motz |
| | United States District Judge |